UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                      11-cr-576 (PKC)

             -against-


                                           <u>ORDER</u>
EARL PIERCE,

                         Defendant.

-------------------------------------------------------x
EARL PIERCE,
                         MOVANT,


                                                18-cv-2412 (PKC)

             -against-


UNITED STATES OF AMERICA.

-------------------------------------------------------x

CASTEL, U.S.D.J.:

        Earl Pierce moves to vacate, set aside, or correct the sentence imposed upon him

under 28 U.S.C. § 2255.  Alternatively, he seeks a reduction of sentence under 18 U.S.C. §

3582(c)(1)(A)(i) for extraordinary and compelling reasons.

        In December 2012, Pierce was convicted by a jury on multiple counts stemming

from his participation in the Courtland Avenue Crew ("CAC"), including participating in a RICO

enterprise, 21 U.S.C. § 1962(c) (Count One)[1]; racketeering conspiracy, 18 U.S.C. § 1962(d)

(Count Two); conspiracy to murder in aid of racketeering, 18 U.S.C. § 1959(a)(5) (Count Three);

---

[1] The variance in the numbering of Counts in certain portions of the record is due to the use of a redacted and renumbered version of the Indictment before the jury.  This Opinion refers to each Count as it appeared in the Indictment and in the Judgments.  (ECF 93; ECF 501 & 611.)

assault/attempted murder in aid of racketeering, 18 U.S.C. §§ 1959(a)(3) & (5) (Count Eleven); conspiracy to distribute and possession with intent to distribute crack and marijuana, 21 U.S.C. §§ 841(b)(1)(A), 841(b)(1)(D) & 846 (Count Fifteen); discharge of a firearm in furtherance of a crime of violence, 18 U.S.C. §§ 924(c)(1)(A)(i) & 924(c)(1)(C)(i) (Count Twenty-Four); and possession of a firearm during and in relation to a drug trafficking crime, 18 U.S.C. §§ 924(c)(1)(A)(i) & 924(c)(1)(C)(i) (Count Twenty-Eight).  (ECF 11-cr-576, Minute Entries for 12/4/12; ECF 501.)[2]

The late Judge Pauley originally sentenced Pierce to principally 600 months imprisonment in 2013.  The case was remanded by the Second Circuit for resentencing.  See United States v. Pierce, 785 F.3d 832, 846 (2d Cir. 2015).  In 2017, upon resentencing for his two convictions under section 924(c) (Counts Twenty-Four and Twenty-Eight), his sentence was reduced to principally 540 months imprisonment.[3]  (ECF 611.)

In his section 2255 motion, Pierce argues that his convictions should be set aside due to ineffective assistance of counsel.  He also argues that his conviction under section 924(c) was based on a crime that does not qualify as a "crime of violence," a necessary predicate under the statute, and that this conviction should be set aside on those grounds.

For reasons that will be explained, the Court concludes that the crime of attempted murder under New York law that is charged in Count Twenty-Four qualifies as a "crime of violence" under the modified categorical approach.  Pierce's arguments regarding ineffective assistance of counsel also fail.  Pierce's section 2255 motion will therefore be denied.

---

[2] All citations to ECF are to the criminal docket, 11-cr-576.
[3] During resentencing in 2017, Judge Pauley found that, per the Second Circuit's instructions, the Court should apply the rule of lenity and treat the possession conviction as the first section 924(c) conviction and the discharge conviction as the second section 924(c) conviction. (ECF 612, Tr. 19:5-13.)

The Court grants Pierce's separate motion for a reduction in sentence for extraordinary and compelling reasons, 18 U.S.C. § 3582(c)(1)(A), and reduces his sentence from principally 540 months imprisonment to principally 360 months imprisonment.

I.    The Section 2255 Motion

A person in federal custody may collaterally attack a final judgment in a criminal case based on "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in complete miscarriage of justice.'"  Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (citation omitted).  Review of a section 2255 motion "is 'narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources.'"  United States v. Hoskins, 905 F.3d 97, 102 (2d Cir. 2018) (quoting Graziano, 83 F.3d at 590).

Pierce was charged with being a member of an enterprise known as the Courtland Avenue Crew ("CAC").  Pierce's offense conduct, as developed at trial, is summarized by the government as follows:

> The growth of the CAC's drug business was largely the result of a vacuum left in the drug market around the Melrose-Jackson Houses by a federal drug indictment and related arrests in the area in 2009.  (PSR ¶ 53).  The CAC and its members aggressively filled that vacuum, but their success eventually drew the attention of other drug dealers and gangs in the area.  (PSR ¶ 55).  Several violent attacks and reprisals resulted.

> Among the violence during the summer of 2010 were three murders by CAC members of men whom the CAC viewed as potential threats to Harrison and the CAC's drug business.  (PSR ¶ 57).  Pierce himself participated in the conspiracy to commit one of the murders, which caused the death of Jason Correa, who was an associate of a rival gang.  (PSR ¶ 64).  That murder involved Harrison shooting Correa multiple times with a .380 pistol in a stairwell of the apartment building at 681 Cortlandt Avenue ("681

Cortlandt"), after which Harrison passed the same .380 pistol to
Pierce.  (Trial Tr. 679-50.)  On September 10, 2010, Harrison—the
CAC's leader—was murdered as part of the ongoing the exchange
of violence between the CAC and other gangs.  (PSR ¶ 57).  That
murder resulted in yet more violence.

On September 13, 2010, Pierce and others attacked attempted [sic]
to murder Tarean Joseph, a rival gang member, as retaliation for
Harrisons' murder.  (PSR ¶ 69).  Pierce and a co-defendant fired
shots from a 9 millimeter and .40 caliber firearm, respectively, at
Joseph and other members of Joseph's crew.  (Trial Tr. 686-91).

In addition to his instrumental role in committing violence on
behalf of the CAC, as described above, Pierce was a key member
of the CAC's narcotics conspiracy.  Pierce was close with
Harrison, and the two sold crack cocaine together.  (Trial Tr. 627).
Pierce also collected money from other CAC members who sold
drugs for the organization.  (Trial Tr. 2269).

(ECF 865 at 1-2.)  At the time of the offense conduct, Pierce was at least 26 years old.  He is

presently 39 years old and has served about 12 years and 11 months of his sentence.  His

projected release date is August 13, 2051.

Pierce initially moved under section 2255 on ineffective assistance of counsel

grounds.  (ECF 639.)  He later amended his section 2255 motion to expand on his ineffective

assistance claims and to add a claim that his section 924(c) conviction (Count Twenty-Four)

rested on assault and attempted murder in aid of racketeering (Count Eleven)[4], which he argued

was not a "crime of violence."  (ECF 647 at 20-21.)

A.  Section 924(c) Conviction

Relying upon United States v. Johnson, 576 U.S. 591 (2015) and Sessions v.

Dimaya, 584 U.S. 148 (2018), Pierce asserts that attempted murder is not a crime of violence

within the meaning of 18 U.S.C. § 924(c)(3)(A).  (ECF 647 at 20-21.)  The disposition of this

---

[4] Pierce refers to Count Eleven as "Count Ten," which is how it was charged to the jury.

motion is aided by the decision of the Second Circuit in United States v. Pastore, 36 F.4th 423, 430 (2d Cir. 2022), opinion withdrawn and superseded on rehearing, 83 F.4th 113 (2d Cir. 2023) (Pastore II).

Utilizing the modified categorical approach, the Circuit considered whether the crime of attempted murder under New York law was a "crime of violence" within the meaning of section 924(c)(3)(A).  In Pastore II, the predicate "crime of violence" was, as in the instant case, attempted murder under New York Penal Law §§ 20.00, 110.00 and 125.5. 83 F.4th at 120; ECF 93 at ¶11(b). The Court held as follows: "Because [defendant's] conviction for attempted murder in aid of racketeering under 18 U.S.C. § 1959(a)(5) is premised on the predicate crime of attempted murder under New York law, which constitutes a crime of violence as defined in the elements clause of section 924(c), we conclude that [defendant's] conviction for attempted murder in aid of racketeering under section 1959(a)(5) is necessarily a crime of violence."[5]  83 F.4th at 121-22.

Pastore II is controlling.  Pierce's conviction was premised upon a qualifying "crime of violence."  It is not necessary to reach the government's alternative arguments for upholding the conviction.

In a letter dated December 1, 2023, in response to the Court's inquiry, counsel for Pierce acknowledged that the Second Circuit decisions in Pastore II, United States v. Morris, 61 F.4th 311, 317–20 (2d Cir. 2023), and Gomez v. United States, 87 F.4th 100, 109-11 (2d Cir. 2023) control and, when coupled with the procedural default rule, foreclose his section 2255 challenge.  (ECF 858.)  Pierce maintains that these cases were wrongly decided, and he thus stands on his challenge but does not dispute that this Court is bound by controlling precedent.

---

[5] Like Pierce, the defendant in Pastore II had originally premised his argument on Johnson v. United States, 576 U.S. 591 (2015) and Sessions v. Dimaya, 584 U.S. 148 (2018).  See Pastore II, 83 F.4th at 118 n.4.

B. <u>Ineffective Assistance of Counsel</u>

1. <u>Withdrawal or Abandonment of Ineffective Assistance Claims</u>.

Pierce filed a section 2255 motion on March 16, 2018, asserting in twenty-two pages his grounds for relief.  (18-cv-2412, ECF 1.)  Thereafter, he filed a brief reiterating several of his arguments.  (18-cv-2412, ECF 6.)  In October 2019, Benjamin Gruenstein and Nicole Valente filed notices of appearances on behalf of Pierce.  (18-cv-2412, ECF 10 & 11.)

In July 2021, the case was reassigned to the undersigned.  (18-cv-2412, ECF 19; Minute Entry, 7/29/2021.)  The Court issued periodic orders requiring updates based on the status and impact of cases pending in appellate courts.  (11-cr-576, ECF 752, 766, 789, 797, 799.)  Finally, on October 23, 2023, the Court issued an Order relevant to the section 924(c) issue and closed the Order with the inquiry, "Is there any other issue presented on the motion to vacate that the Court should or must decide[?]"  (ECF 850 ¶ 5.)  Counsel for Pierce responded as follows: "Mr. Pierce does not believe there are any other issues presented in his § 2255 motion that the Court should decide.  Mr. Pierce notes only that his <u>pro se</u> motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Criminal Dkt. No. 778) is currently pending before the Court.  On October 16, 2023, the Court ordered further briefing on that motion (Criminal Dkt. No. 848), which remains ongoing."  (ECF 858 at 4.)[6]

The Court concludes based upon the response of defense counsel, concurred in by the government (ECF 863 at 2), that Pierce's ineffective assistance claims have been withdrawn or abandoned.  Nevertheless, and to avoid doubt, the Court reaches the issues in the event the Court is wrong that they have been withdrawn or abandoned.

---

[6] The reference to the motion under section 3582(c)(1)(A)(i) was to Pierce's motion for a sentence reduction for extraordinary and compelling reasons.

2.  <u>Alternatively, the Merits</u>.

Pierce's initial submission on his section 2255 motion contended that his attorneys provided him with ineffective assistance at both the trial and appellate levels.  (ECF 639; ECF 647.)[7]

A defendant asserting that his counsel's performance was constitutionally deficient under the Sixth Amendment must satisfy a two-prong test: the defendant "must show that the counsel's performance was (a) 'deficient' according to 'an objective standard of reasonableness,' and (b) 'prejudicial,' defined as giving rise to 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>Abreu v. United States</u>, 2023 WL 6632951, at *2 (2d Cir. Oct. 12, 2023) (summary order) (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 687–88, 694 (1984)).  In deciding whether counsel's performance was objectively reasonable under the first prong, a court "must make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time,' and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  <u>Henry v. Poole</u>, 409 F.3d 48, 63 (2d Cir. 2005) (quoting <u>Strickland</u>, 466 U.S. at 689).  In deciding the prejudice prong, a court must "determine whether, but for counsel's deficient performance, 'there is a reasonable probability that . . . the result of the proceeding would have been different,' for an 'error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'"  <u>Id.</u> (quoting <u>Strickland</u>, 466 U.S. at 694, 691).

---

[7] Pierce explained in a footnote that he "alleged denial of effective assistance of both trial and appellate counsels premised upon the very same set of errors," although he emphasized that these grounds "still remain separate bas[e]s for relief."  (18-cv-2412, ECF 6 at 5 n.1.)

In his initial and supplemented section 2255 motion, Pierce raised several grounds for relief based on alleged ineffective assistance of his trial and appellate counsel.  After withdrawing several of these grounds in his response to the government's opposition brief, Pierce's remaining arguments were based on his attorneys' alleged failure to (1) challenge the Indictment on certain grounds and (2) challenge the jury instructions on Counts Fifteen, Twenty-Four, and Twenty-Eight.[8]  (ECF 659.)  In prior briefing, the government contended that under Strickland, Pierce's ineffective assistance claims must fail because his attorneys' representation was not constitutionally deficient and did not prejudice Pierce.  (18-cv-2412, ECF 8 at 12.)

a. Failure to Challenge the Indictment

Pierce argued that his counsel should have challenged the Indictment's allegations under RICO (Counts One, Two, and Three) because the Indictment did not adequately allege continuity of criminal activity.  Pierce argued that the Indictment referred to a 13-month period of criminal activity that, by definition, constitutes a closed-ended conspiracy, and that a 13-month period is not long enough to sustain an allegation of closed-ended continuity.  (ECF 647 at 7-8; ECF 659 at 1-3.)  The government contended that it sufficiently alleged, "at a minimum," open-ended continuity.  (18-cv-2412, ECF 8 at 15.)

The government is correct.  To establish "open-ended" continuity for a RICO charge, the government must establish that there is a "threat" of continuing criminal activity. H.J. Inc. v. Northwestern Bell Telephone Company, 492 U.S. 229, 242 (1989).  The Indictment alleged the existence of an enterprise to enrich its members through the distribution of narcotics

---

[8] Pierce explicitly withdrew two of his initial arguments about purported failures of his counsel to challenge the sufficiency of the evidence for certain counts and to challenge the reasonable doubt standard given in the jury instructions.  (ECF 659 at 5, 7.)

and preserve the power of the enterprise and its members through "murder, attempted murder, other acts of violence, and threats of violence," and enumerated a pattern of racketeering activity that included conspiracy to murder, murder, attempted murder, narcotics conspiracy, racketeering conspiracy, conspiracy to murder in aid of racketeering activity, murder in aid of racketeering activity, and murder in connection with a drug crime, among other activities.  (ECF 93 ¶¶ 3-59.)  These allegations "automatically carr[y] . . . the threat of continued racketeering activity," thus sufficiently establishing the open-ended continuity requirement.  See United States v. Burden, 600 F.3d 204, 219 (2d Cir. 2010) (quoting United States v. Indelicato, 865 F.2d 1370, 1383–84 (2d Cir. 1989)) ("Where the enterprise is an entity whose business is racketeering activity, an act performed in furtherance of that business automatically carries with it the threat of continued racketeering activity.").

Pierce's related argument regarding the Indictment—that it did not sufficiently allege Counts Two and Three under RICO because it did not allege predicate acts for each of those counts—also fails.  The "plain language" of the Indictment, as the government notes, incorporated the allegations about the overall enterprise in paragraphs 1 through 4 of the Indictment's Introduction and Count One (which Pierce concedes was properly alleged) into Counts Two and Three.  (18-cv-2412, ECF 6 at 6-7; 18-cv-2412, ECF 8 at 16-17.)  (See 11-cr-576, ECF 93 ¶ 16, Count Two ("Paragraphs 1 through 4 of Count One of this Indictment are realleged and incorporated by reference as through fully set forth herein."); id. ¶ 19 (Count Three).)  See also Rule 7(c)(1), Fed. R. Crim. P. ("A count [in an indictment] may incorporate by reference an allegation made in another count.").  Both Count Two and Count Three sufficiently alleged predicate acts as part of that conspiracy:  Count Two specifically alleged violations of New York Penal Law for murder, attempted murder, and conspiracy to murder, along with

distribution of controlled substances, and Count Three alleged "acts involving murder in violation of New York Penal Law" and "narcotics trafficking in violation of" 21 U.S.C. §§ 812, 841, and 846.  (ECF 93 ¶¶ 16-17, 19-21.)  Pierce's argument that Count Two alleged "general, unspecific acts of murder and drug-related crimes under state law" and that Count Three "suffers from the same flaw" thus fails.  (ECF 647 at 6-7.)

Finally, Pierce argues that the Indictment did not "sufficiently connect or link a 924(c) offense predicate crime committed with a 'firearm' usage."  (18-cv-2412, ECF 6 at 19.) Pierce contends that this constitutes an Apprendi error because it "impos[es] a mandatory statutory enhancement under 924(c) without a jury finding that the crime of violence offense in Count [Eleven] necessarily had a firearm employed in its commission."  (Id.)  See United States v. Peña, 58 F.4th 613, 621-22 (2d Cir. 2022), as amended (Jan. 27, 2023), cert. denied, 144 S. Ct. 147 (2023) (quoting Apprendi v. New Jersey, 530 U.S. 466 (2000)) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.")).

But this argument also fails.  As discussed, Count Eleven, the predicate crime on which the section 924(c) charge was based, the attempted murder of Tarean Joseph, is a crime of violence under Pastore II.  The Indictment itself alleged in Count Eleven that Pierce and his co-defendants "intentionally and knowingly assaulted an individual with a dangerous weapon; attempted to murder an individual; and aided and abetted the same, to wit . . . [Pierce and co-defendants] committed, and aided and abetted, the shooting and attempted murder of V-1 . . . resulting in bodily injury to V-1 . . . .")  (ECF 93 ¶ 37 (emphasis added).)  The jury was charged only to consider Count Twenty-Four if they found Pierce guilty of Count Eleven; it did so and also found as to Pierce that the government proved beyond a reasonable doubt that a firearm was

both brandished and discharged.  (ECF 300 at 174.)  Pierce's argument that the jury did not find

that the "crime of violence offense in Count Eleven necessarily had a firearm employed in its

commission" therefore fails and defeats his claim that his 924(c) conviction constituted an

Apprendi error.


   b. Failure to Challenge Jury Instructions

   Pierce also asserted that his counsel allegedly failed to challenge portions of the

jury charge, focusing on Counts Fifteen and Twenty-Four.

   First, Pierce argued that his counsel should have challenged the elements of the

narcotics conspiracy under Count Fifteen by emphasizing to the jury that the drug quantity also

had to be proved "beyond a reasonable doubt."  (ECF 659 at 6.)  As the government pointed out,

however, his defense counsel did seek the requested language at trial—his attorney joined with

his co-defendant's attorney in arguing that "quantity is an element of the offense" and that the

jury needed to find drug quantity in order to convict the defendants of Count Fifteen.  (ECF 354

Tr. 5579-80.)

   Pierce conceded that "the court did explain that drug quantity was an element of

the 846 offense" but argued that the Court made that instruction "outside the court's primary

charge as to the government's burden of proof drawn in connection with the two elements

initially charged to the jury."  (ECF 659 at 5-6.)  The transcript of the Court's instructions to the

jury, however, defeats this claim.  When instructing the jury on Count Fifteen, the Court stated:

"Now Count [Fifteen] of the indictment charges that each defendant knowingly and deliberately

conspired to violate the narcotics laws of the United States.  To meet its burden against a

particular defendant, the government must prove beyond a reasonable doubt that the narcotics

conspiracy charged in Count [Fifteen] of the indictment existed and that the defendant you're considering was a member of it."  The Court instructed the jury on the law of conspiracy, then continued: "Now if, and only if, you conclude that the government has met its burden of establishing a defendant's guilt beyond a reasonable doubt of the narcotics conspiracy charged in Count [Fifteen], then you must determine what quantity of drugs the conspiracy involved."  The Court explained to the jury the quantities of crack cocaine they needed to consider and then explicitly stated: "Your finding as to drug quantity must be beyond a reasonable doubt."  (ECF 364 (Trial Tr. 11/28/2012, 6270-6271); see also ECF 300 at 51 (Jury Charge).)  The Court therefore was clear that the quantity of drugs also needed to be established beyond a reasonable doubt by the government, and it did not give that instruction "outside" the primary charge.

Second, Pierce argued that his counsel should have challenged the jury instructions on Count Twenty-Four for not requiring the jury to determine "which of the two offenses" he committed – "us[ing] or carr[ying]" a firearm or "possess[ing]" a firearm under 18 U.S.C. § 924(c)(1)(A).  Pierce argued that this constituted a "constructive amendment" of the Indictment.  (ECF 647 at 10-12.)  But at the time of Pierce's indictment and his trial, the Second Circuit had not answered the question of whether section 924(c) creates these two separate offenses.  Although Pierce noted this circumstance himself (see ECF 647 at 10-12), this open question of law at the time of his trial defeats, rather than supports, his ineffective assistance argument here.  See, e.g., United States v. Ramirez, 2022 WL 2703596, at *6 (S.D.N.Y. July 11, 2022) (Sullivan, J.) (citation omitted) (observing that the Second Circuit had not yet decided whether section 924(c) "enumerates two separate offenses" at the time of defendant's indictment and trial but that a circuit split existed on the question, and concluding that "the mere existence of contrary authority on the subject, alone, reveals that [defendant]'s trial counsel's 'failure to

object to the language of Count [Two] – if considered a failure at all – certainly [did] not rise to

the level of constitutionally ineffective assistance.'")  Thus, even if this argument was found to

have merit, Pierce cannot show that he was prejudiced by this alleged error of his counsel.  Id.

Each of Pierce's arguments regarding ineffective assistance of his trial and

appellate counsel fails.  Because Pastore II forecloses his arguments based on section 924(c), and

because his ineffective assistance claims also fail, the Court will deny Pierce's section 2255

motion.


II.      The Motion for Sentence Reduction

A.  Exhaustion

Provided the exhaustion requirement is met, a court may reduce a defendant's

sentence if it finds that "extraordinary and compelling reasons warrant such a reduction."  18

U.S.C. § 3582(c)(1)(A)(i).  The government acknowledges that Pierce applied to the Bureau of

Prisons for a sentencing reduction and the request was denied.  (ECF 865 at 6-7.)  He filed his

motion for a sentencing reduction more than 30 days after the denial.  (Id.)  Thus, he has satisfied

the statutory exhaustion requirement.


B.  Standard for Granting a Reduction

1.  Extraordinary and Compelling Reasons.

Section 3582(c) explicitly prohibits a modification of a sentence unless one of the

limited exceptions applies.  Pierce invokes the "extraordinary and compelling reasons"

exception.  18 U.S.C. § 3582(c)(1)(A)(i).  In reviewing a motion invoking this exception, the

Court may consider all circumstances in combination or in isolation, except that rehabilitation

alone may not be the ground for a reduction.  See United States v. Brooker, 976 F.3d 228, 237-38 (2d Cir. 2020).

A Policy Statement issued by the United States Sentencing Commission, effective November 1, 2023, presents helpful guidance to a Court considering a motion to reduce a sentence for extraordinary and compelling reasons.  U.S.S.G. §1B1.13 (amended eff. Nov 1, 2023).  The Policy Statement addresses in some detail considerations relating to the "Medical Circumstances of the Defendant," "Age of the Defendant," "Family Circumstances of the Defendant," "Victim of Abuse," "Unusually Long Sentence," and "Other Reasons."

Here, Pierce principally argues that "Congress has renounced the interpretation of § 924(c)" that produced the "extremely long" sentence he received.  (ECF 778 at 15.)  He argues that this "drastic change in the law goes far towards establishing the extraordinary and compelling circumstances necessary to warrant relief."  (ECF 778 at 17.)[9]  Pierce asserts that "his sentence was exacerbated by the application of the 'stacking rule' for [section] 924(c) convictions, which has since been clarified by the First Step Act."  (ECF 867 at 4.)  The First Step Act, passed in 2018, did change section 924(c) to require a "final" prior conviction under section 924(c) before the mandatory minimum for the second section 924(c) conviction could be "stacked."  See United States v. Davis, 588 U.S. 445, 450 n.1 (2019) (first citing Deal v. United States, 508 U.S. 129, 132 (1993); then quoting First Step Act of 2018, PL 115-391, § 403(a), 132 Stat. 5194 (2018)) ("When this case was tried, a defendant convicted of two § 924(c) violations in a single prosecution faced a 25-year minimum for the second violation.  In 2018, Congress

---

[9] Pierce also cites the "Age of the Defendant" circumstance in his favor under the extraordinary and compelling reasons analysis, arguing that he is almost fifty years old, "an age where the risk of recidivism is close to 1%." (ECF 778 at 18.)  But the Sentencing Commission's report, Recidivism Among Firearms Offenders (June 2019), reflects a rearrest rate of firearms offenders over age 50 of 39.3%.

changed the law so that, going forward, only a second § 924(c) violation committed 'after a prior [§ 924(c)] conviction . . . has become final' will trigger the 25-year minimum.").

Pierce contends that he "could be sentenced to 7 years, rather than 25 years," for the section 924(c) convictions if he were sentenced today.  (ECF 778 at 17.)  The government disagrees and states that Pierce would receive a mandatory consecutive term of 15 years—10 years for the discharge of the weapon and 5 years for the possession of the weapon—"in addition to the mandatory minimum term of imprisonment of 10 years for his conviction for conspiring to distribute crack cocaine, and to any additional term of imprisonment imposed."  (ECF 865 at 7.)

The Court agrees with the government's calculation.  Pierce was convicted on two separate counts of violating section 924(c): Count Twenty-Four, discharge of a firearm, which under section 924(c)(1)(A)(iii) carries a term of not less than 10 years' imprisonment; and Count Twenty-Eight, possession of a firearm, which carries, under section 924(c)(1)(A)(i), a term of not less than 5 years' imprisonment.  18 U.S.C. § 924(c)(1)(A)(i)-(iii).  The statute also provides that these terms may <u>not</u> run concurrently "with any other term of imprisonment imposed on the person."  <u>Id.</u> § 924(c)(1)(D)(ii); <u>see also</u> <u>Lora v. United States</u>, 599 U.S. 453, 455 (2023) (citations omitted) ("When a federal court imposes multiple prison sentences, it can typically choose whether to run the sentences concurrently or consecutively.  An exception exists in subsection (c) of § 924, which provides that 'no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment.'").

Pierce would therefore serve consecutive sentences of ten years and five years on Counts Twenty-Four and Twenty-Eight for a total of 15 years (or 180 months), rather than his initial sentence of 30 years (360 months) on those counts.  This fifteen-year sentence is also consecutive to his sentence of 180 months on Counts One, Two, Eleven, and Fifteen, and his

concurrent sentence of 120 months on Count Three.  (ECF 611.)  This would result in a sentence of 360 months if he were sentenced today, rather than the sentence of 600 months he initially received or the sentence of 540 months he received upon resentencing in 2017.

The government acknowledges that subsection (b)(6) of the Sentencing Commission's Policy Statement provides grounds for a sentence reduction that may apply to Pierce's case—i.e., where there is an "unusually long sentence" and a "change in law."  But the government contends that the Sentencing Commission exceeded the authority given to it by Congress in promulgating subsection (b)(6) in this way, and that "Subsection (b)(6) is, therefore, invalid."  (ECF 865 at 9-10.)  In support of this contention, the government argues that no reasonable interpretation of the phrase "extraordinary and compelling" could "encompass a nonretroactive or intervening change in the law."  (Id. at 10.)  The government also reads section 3582(c)(2) to permit a court to reduce a sentence only for a subsequent lowering of the sentencing guidelines by the Sentencing Commission and argues that Congress did not provide similar authority for the Commission or district courts to revisit sentences for subsequent statutory amendments or changes in law.  (Id.)  Subsection (b)(6), the government continues, therefore "undermines congressional design by supplanting the 'remedial vehicle'" of section 2255.  (Id.)

The government acknowledges that the Second Circuit has not yet ruled on this question but asserts that the majority of other Courts of Appeals have held that "changes in law" do not create an "extraordinary and compelling basis" under Section 3582(c)(1)(A).  (Id.)  Four other circuits, however, have found that such a change in law can form part of the sentence reduction assessment, in combination with other factors.  (Id. n.4.)  And even if subsection (b)(6) were valid, the government continues, a reduction in Pierce's sentence would still be

"unwarranted" because his sentence of 540 months is not "grossly disparate" to what it would be if it were imposed today.  (<u>Id.</u> at 11.)

The Court finds no basis to conclude that the Sentencing Commission overstepped its bounds in issuing subsection (b)(6) of the Policy Statement.  The Sentencing Commission was established by statute to "establish sentencing policies and practices" that "provide certainty and fairness in meeting the purposes of sentencing."  28 U.S.C. § 991(b)(1) & (b)(1)(B).  This broad mandate encourages guidance on a sentencing reduction for "extraordinary and compelling reasons," which, itself, is a broad standard.  18 U.S.C. § 3582(c)(1)(A)(i).  The circumstance that the statute also permits a Court to reduce a term of imprisonment based upon a sentencing range subsequently lowered by the Sentencing Commission, 18 U.S.C. § 3582(c)(2), simply does not speak to the Court's discretion to consider the impact of a statutory change affecting a sentence even if not retroactive.

Several recent decisions from district courts have rejected similar arguments by the government.  In <u>United States v. Capps</u>, for example, the district court rejected the government's argument that "subsection (b)(6) is an invalid exercise of the Commission's authority . . . because nonretroactive changes to sentencing law are neither extraordinary nor compelling," as well as the government's argument "that the subsection raises separation-of-powers concerns because it contradicts Congress's deliberate choice not to make the change in sentencing law here retroactive."  The court concluded that "[n]othing in the statute's text prohibits the Commission from considering nonretroactive changes in the law as extraordinary and compelling reasons for a sentence reduction."  <u>United States v. Capps</u>, 2024 WL 880554, at *7 (E.D. Mo. Jan. 31, 2024); <u>see also</u> <u>United States v. Cousins</u>, 2024 WL 1516121, at *4 (N.D. Ga. Apr. 4, 2024) ("For the Government to argue that the Sentencing Commission somehow has

exceeded its authority in promulgating U.S.S.G. § 1B1.13(a)(6) ignores the specific authority given by Congress to the Sentencing Commission to develop the 'extraordinary and compelling reasons' for a sentence modification, and also is disingenuous given the Government's prior representation to the United States Supreme Court" that the Sentencing Commission, rather than the Supreme Court, should decide whether a nonretroactive change in the law could constitute an extraordinary and compelling reason); United States v. Hickman, 2024 WL 1340576, at *4 (E.D. Tex. Mar. 13, 2024), report and recommendation adopted, 2024 WL 1340054 (E.D. Tex. Mar. 28, 2024) (collecting cases from early 2024 in which federal courts in various circuits "have rejected the assertion that the Sentencing Commission lacked authority to enact U.S.S.G. § 1B1.13(b)(6)"); United States v. Padgett, 2024 WL 676767, at *3 (N.D. Fla. Jan. 30, 2024) (rejecting government's argument that the Sentencing Commission "went too far, because . . . a temporal disparity, no matter how great or how unusual, can never provide an extraordinary and compelling reason for a sentence reduction").  Pierce also invokes United States v. Brooker, in which the Second Circuit held that a district court may use its broad discretion to grant compassionate release on "nontraditional grounds."  (ECF 867 at 7 (citing United States v. Brooker, 976 F.3d 228, 233-34 (2d Cir. 2020).)

       The difference between the sentence Pierce did receive and the sentence he would receive today is striking and substantial, and this presents a circumstance that is both extraordinary and compelling.

       2.  Section 3553(a) Factors.

       If, as here, a Court finds the existence of extraordinary and compelling reasons for a reduction, the inquiry does not end there.  "[E]xtraordinary and compelling reasons are

necessary – but not sufficient – for a defendant to obtain relief under § 3582(c)(1)(A)" because "a district court must also consider 'the factors set forth in section 3553(a)' before granting relief."  United States v. Jones, 17 F.4th 371, 374 (2d Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)).  An application is properly denied if the section 3553(a) factors weigh against the application. 18 U.S.C. § 3553(a); see Jones, 17 F.4th at 374-75; see also United States v. Davis, 2024 WL 371121, at *2 (2d Cir. Feb. 1, 2024) (summary order) ("Where the 18 U.S.C. § 3553(a) sentencing factors do not support modification of the sentence, a district court may not grant a compassionate release motion."); United States v. Keitt, 21 F.4th 67, 69 (2d Cir. 2021) ("[W]hen a district court denies a defendant's motion under § 3582(c)(1)(A) in sole reliance on the applicable § 3553(a) sentencing factors, it need not also determine whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction.").

        The Court has considered each of the factors set forth in section 3553(a) and need not recount all that it has considered.  Pierce filed a pro se motion for a sentence reduction noting, correctly, that extraordinary and compelling reasons cognizable under section 3582 exist: he cites the length of his sentence and the nonretroactive changes in the law that would result in a lower sentence if he were sentenced today.  But the nature and circumstances of the crime loom large in the analysis as well.  Pierce was a member of a racketeering enterprise operating principally in the Bronx, the CAC, that engaged in murder, violence, and drug distribution.  Pierce conspired to kill an associate of a rival drug gang, Jason Correa, with the leader of the CAC, Terry Harrison; after Harrison shot Correa, who died from the attack, he handed Pierce the weapon.  Pierce thereafter attempted to murder another rival gang member, Tarean Joseph, by

shooting repeatedly at him and other members of the rival gang.  He was also involved in the CAC's sale of drugs.  (ECF 865 at 1-2.)

Since he was incarcerated on the instant convictions, Pierce has repeatedly attempted to earn his GED and has completed hundreds of hours of coursework in different areas.  He has had several minor disciplinary infractions.  He has worked as an orderly during his incarceration.  (ECF 612, Tr. 5-9.)  The need to protect the public from further crimes of this defendant has somewhat dissipated from his age, maturity, and education.  But the need to impose just punishment and deter others from committing similar crimes, however, tilts against a substantial sentence reduction.

The stated or nominal length of Pierce's term of imprisonment is 540 months. Measured from the time of original remand (September 27, 2011)[10] to the date of projected release (August 13, 2051),[11] his effective term of imprisonment is 478 months and 18 days (or 39 years, 10 months, and 18 days).  He has served about 32% of that sentence (12 years, 11 months).

A balancing of the section 3553(a) factors does not warrant a release to time served (about 155 months' imprisonment), as requested by Pierce.  There remains a need for just punishment, to promote respect for law, to protect the public from further crimes of this defendant, and to deter others from committing similar crimes.  But the finding of extraordinary and compelling reasons and the balance of section 3553(a) factors warrants a reduction of the sentence of the stated term of imprisonment of 540 months to a term of 360 months imprisonment.

---

[10] PSR at 3. (ECF 610.)
[11] https://www.bop.gov/inmateloc (last accessed May 15, 2024).

CONCLUSION

Upon the finding that extraordinary and compelling reasons exist for a sentence reduction and considering the section 3553(a) factors, the Court concludes that a reduction in Pierce's term of imprisonment from 540 months imprisonment to 360 months imprisonment is warranted and hereby GRANTED.  All other terms and conditions of the original judgment, including the term of 60 months' supervised release, remain in place.[12]

The Clerk is requested to terminate the motions in 11-cr-576 (ECF 639, 778) and close 18-cv-2412.


SO ORDERED.


Dated: New York, New York
        May 15, 2024

                                                    P. Kevin Castel
                                                United States District Judge

---

[12] The Court sentenced Pierce to 5 years' supervised release on counts 1, 2, 15, 24, and 28, and a concurrent sentence of 3 years' supervised release on counts 3 and 11.  (ECF 611 at 4.)